Thank you, Chief Judge Thomas, and may it please the Court, my name is Jamie Santos and I am representing Mr. Tilei. Tilei, thank you. Yes. The detailed factual allegations in Mr. Tilei's complaint establish a degree of cruelty and a quantum of harm that are at the heart of what the Eighth Amendment prohibits. In Tilei v. McGinnis, Mr. Tilei alleges that he was suffering from injuries so severe that he underwent two major surgeries and pain so excruciating that he actually attempted suicide to escape it. And when he turned to prison administrators and physicians and nurses for relief, they just turned him away without providing the follow-up care that his surgeons had ordered and without providing any care at all. Instead, they callously told him that the pain was all in his head, that he should stop whining and that his medical problems should not be solved in prison and that he should go outside the prison if he wanted to receive care. And in Tilei v. CDCR, Mr. Tilei alleges that prison officials and correctional officers were so annoyed with his pleas for medical assistance that they harassed him, they spread dangerous rumors about him, and physically and sexually assaulted him. When the Supreme Court said in Farmer v. Brennan that the Constitution does not permit inhumane prisons, these facts are exactly what it had in mind. Now, the Court has consolidated these two cases for oral argument this morning, and they contain one common issue, Mr. Tilei's request for counsel. But before getting to that, I'd like to first discuss the merits of Mr. Tilei's complaints, beginning with the Rule 41B issue that the State raised in its answering briefs. Then I'll turn to the sufficiency of his complaints and finally address the appointment of counsel issue. Now, the State argues that the sufficiency of Mr. Tilei's complaints are unreviewable because the district courts dismissed his case under Rule 41B. Now, this argument doesn't apply to the CDCR case because it's clear from the record that the district court didn't dismiss that case under Rule 41B at all. It instead just entered judgment against him, as was well within its purview to do in the absence of an amended complaint, in which the Eastern District could have done just as easily in the McGinnis case. Well, can I ask a question? We have an — we wrote a disposition at one point in an appeal and said that he should be permitted to amend? Yes, Your Honor. The — when he appealed previously the denial of his Rule 60B motion to reopen his case, the merits of his complaint were not before the court. He only raised the Rule 60B issue. So when this court remanded, it noted that the court should proceed below by allowing him to continue by amending his complaint, considering his request for counsel. But the sufficiency of that complaint was never before the court. And it is probably before the court here. Now, in framing the Rule 41B issue, I think it's really important to keep in mind that the court does not ask for litigants to amend a complaint after it's dismissed with leave to amend. Instead, the court offers leave to do so. And that's why, repeatedly, this Court has examined the merits of dismissals when they proceed of Rule 41B dismissal. Now, the State relies heavily on Edwards v. Marin Park in arguing that this Court can't look at the merits of his complaints. But Edwards actually undermines the State's case, because in Edwards, this Court held that district courts cannot impose a Rule 41B sanction when unless the plaintiff is given an ultimatum to either amend or have the case dismissed, and simply fails to do anything and fails to respond to that order at all. Submitting a response very simply allows the district court to get the case off its docket, to enter a judgment, close the case, and not have to worry about it anymore. It's all the plaintiff has to affirmatively indicate that he intends to stand on the complaint, right? So was there any such clear indication here? Well, Your Honor, what Edwards says is that the district court has to make the district the litigant has to make the district court aware that it will not be filing an amended complaint. And that certainly is clear in the record in both of these cases. After the district courts dismissed Mr. Thiele's complaint with leave to amend, he filed a request for counsel in which he stated that he could not amend his complaint without assistance, and he would not be doing so. The district courts were certainly on notice that no amended complaint would be forthcoming. And that's the reason for the Edwards rule. The Edwards rule came from the WMX Technologies case where the court said that requiring some affirmative indication allows the court to close the case rather than just have it remain open forever. And I think it's also important to note that this rule is fairly harsh in the context of a dismissal with leave to amend, as opposed to another order that a defendant doesn't comply or a plaintiff doesn't comply with that leads to a Rule 41b. So an order of dismissal with leave to amend is an appealable order. And actually, choosing to amend the complaint makes that the case. Kennedy, if judgment is entered. Yes, if judgment is entered, which it was in both of these cases. And if a plaintiff actually chooses to amend the complaint after being – after having the complaint dismissed, that prior order of dismissal becomes unappealable, even if the plaintiff – even as to claims that the plaintiff believes were improperly dismissed and which he chooses not to assert in an amended complaint because he feels that he can't meet the standard that the district court required, even if that standard was erroneously high. And so interpreting Rule 41b to also make that prior order of dismissal unappealable is a really harsh sanction. And it should happen only where the plaintiff is completely silent and the district court has no idea, essentially, what's going on. It's left hanging. And that's not what happened here. And Mr. Thiele did respond to both of the Court's orders. And so even under the Edwards Rule, this Court can reach the merits of Mr. Thiele's complaints. Now, turning to the merits of Mr. Thiele's complaint in the McGinnis case, this Court has long held that delaying surgery, failing to comply with the orders of a treating specialist, and failing to respond to a prisoner's pain all state a claim for deliberate indifference. And that's exactly what Mr. Thiele alleged. His complaint was not cursory. It was detailed. There were factual allegations to support all of his claims. And what the State and the district court have done is they've basically offered alternative explanations for what the defendants did. Perhaps they really believed that the pain was all in the plaintiff's head. Maybe they simply disagreed with the diagnosis. And maybe those callous comments that they made to him, things like, this is all in your head, you should not be in prison if you want proper medical care, maybe all of those were just the product of frustration. And respectfully, those are arguments that might convince a jury, but they don't they don't justify dismissing a complaint that's adequately pled under this Court's precedence. In addition to drawing improper inferences against Mr. Thiele, the district court made two other fundamental errors in dismissing his complaint. First, it ignored allegations that were in the complaint. It faulted him, for example, for failing to make clear how prison nurses and administrators would have known that he wasn't receiving adequate care. But he did that repeatedly. He communicated his pain to those individuals directly, and they simply dismissed them. And secondly, and perhaps even of greater concern, the district court misconstrued what the legal standard is for deliberate indifference. Under the district court's analysis, a generalist prison physician or nurse can ignore the tests, the surgical results, and the orders of a treating specialist because they say they disagree with the diagnosis or they disagree with the orders. And that conclusion is directly contrary to this Court's decision in Lopez v. Smith, an en planc decision. And in the Lopez case, a prisoner was referred outside the hospital to surgery. He had jaw surgery. And he was, when he was returned to Corcoran Prison, the same prison at issue here, he, his surgeon ordered him to go back to the hospital each week for follow-up treatments and to receive a liquid diet through a straw. But that didn't happen. He was neither returned to the hospital nor received a diet with a straw. And this Court held that those facts amounted to deliberate indifference because they were an intentional interference with the orders of his treating specialist. And that's exactly what happened here. And on the same basis, this Court should, should reverse the district court's dismissal of his complaint. Well, let me just kind of cut through this. This has a long history. And it would seem to me, as a matter of practical common sense, that the case isn't going to go anyplace unless counsel is appointed. So, what, would you address that? Yes. I'd be happy to, Your Honor. The district courts in both cases made legal errors and also abused its discretion in denying his request for counsel. So the brief points to three, three different legal errors that the courts made. First, in the McGinnis case, the district court stated that Mr. Atile was precluded from a different prison, at a prison that was outside of the judicial district, and therefore he wasn't entitled to injunctive relief. But Mr. Atile didn't just assert claims for injunctive relief. He also asserted claims for damages. And so his imprisonment outside of the district is irrelevant to his request for counsel. And the district court in McGinnis also believed that Mr. Atile, that, that it could not assess the likelihood of his success on, on the complaint in the absence of an injunctive relief. And that's simply not true. The district court knew what the factual allegations were. And in this case, the factual allegations, it's really not even a close call. If you disregard the orders of a surgeon and do nothing, that's deliberate indifference. So the district court could clearly see the likelihood of success on the merits. And in the CDCR case, the district court made a legal error in, in disregarding Mr. Atile's medical condition and, and stating that it was not a basis to appoint counsel. And so those are all legal errors that, that require reversal. But this court should go further and rather than simply reverse, it should also remand and require the district court to appoint counsel. In addition to the merits, which I've already discussed, the, the claims in this case are not only meritorious, they're also serious. The, the Supreme Court has recently acknowledged that serious conditions that are present in California prisons, in the, in the prisons provide a serious provision of medical health care to inmates. And so I think that the allegations must be read in light of the Plata v. Brown case. And, and the, the district court in this case, in, in the McGinnis case said that it saw these kinds of cases all the time. And, and respectfully, that simply can't be true. It can't be true that a district court sees complaints stating that someone has, has medical issues and pains so serious that are untreated that he attempts suicide and that he's physically and sexually assaulted for complaining about his medical care. And even if that were true, then that certainly wouldn't be a reason to offhand dismiss the concerns. If, if our prisons really are in that state of condition, then that's even more reason to appoint counsel in this case and if, if the court sees it in other cases perhaps. And in this case, besides the serious nature of Mr. Thiele's claims, his, his medical condition makes it very difficult for him to concentrate. He can barely sit up. He can write for only a few minutes at a time. And his pain is extremely severe. And, and also the ability to investigate facts, to potentially interview witnesses, but to determine, you know, what, what facts occurred and against whom he should assert claims is something that's very difficult to do with his medical condition as well as in segregated confinement and in a prison outside of, outside of the prison where certain events occurred. For all of these reasons, the, the district court's denial of his request for counsel is an abuse of discretion, even aside from the many legal errors that the district court made. Do you want to reserve some time for rebuttal? I would like to. Thank you, Your Honor. Good morning. Sorry. Good morning, Your Honors. Neil Winn for the defendants appellees in both matters. By affirming the Rule 41B dismissal orders, this court would promote proper respect for the district court's authority and discourage litigants from filing court orders and controlling the pace of litigation by wanting something before they would comply with the district court's orders. This case is not about an inmate confused about the pleading standard. Rather, it's about an inmate trying to strong arm the district court into appointing him counsel, and this court should not reward Mr. Thiele with a reversal. Regarding the, um. What, what do you regard as strong arming the district court? It's clear based on his filings, every time the district court ordered him to file an amended complaint, instead of telling the court, Your Honor, I have nothing more to allege, um, I'm confused about the pleading standard, what else can I say? Instead, he files another motion for appointment of counsel. When the court denies it and said, Mr. Thiele, please file an amended complaint, instead of being confused about the pleading standard, he files another motion for appointment of counsel, and he does this repeatedly, recycling his. He did it twice, right? In the McGinnis case, he filed, correct, in post-remand, he did it twice. Yeah. Um, there's also a history of other motions before the, before the remand. In the McGinnis case, he filed one, two, three, four, five motions for counsel. The district court denied his motions three times, and in each, um, denial, the court warned Mr. Thiele that if you don't comply with the order to amend, you risk dismissal. Um, the parties seem to disagree on whether the dismissal order in the CDCR case was a Rule 41B dismissal for failure to prosecute. The district court in the screening order cited, uh, Rule 41, saying that if you fail to comply with orders, um, you know, your case could be dismissed. Now, to be sure, the district court didn't cite Rule 41B in the subsequent orders. But if the order was not a 41B dismissal, then Mr. Thiele has another problem, because the only other way to construe the order would be a Rule 41A dismissal, and that's a voluntary dismissal. The problem that Mr. Thiele would have is it would deprive this court of jurisdiction because a voluntary dismissal under Rule 41A is treated as if an action had never been brought. And that's because Mr. Thiele has a unilateral right to dismiss his case before an answer is filed or before an MSJ is filed. Right. But that's not what he did here. Would you just explain to me, um, that at one point we asked the district court, told the district court to consider the claim of the request for appointment of counsel. Can you just explain to me how the district court, um, adequately dealt with the request for appointment of counsel? Sure. So post-reband, the court issued the order denying counsel, saying first it recited the exceptional circumstances test, which examines the likelihood of success on the merits. And the district court had already issued a screening order explaining why there are defects in your complaint. The second prong of the test is the ability to articulate claims in light of the complexity of the issues involved. And the district court found that, um, based on what we've seen so far, Mr. Thiele could articulate his claims, or he appeared to be able to articulate his claims. And so the court noted that, especially in the Eastern District, you know, they get these prisoner cases all the time. And so, especially at the pleading stage, um, you know, the court, I can see why the court would be very cautious to appoint counsel right out of the litigation gate, because pro bono resources are very scarce. And so when you appoint pro bono counsel to one pro se litigant, you do so to detriment of other litigants. Well, but was the district court required under our law to take into account his physical condition and his ability to, um, to comply with all the niceties of meeting what the district court had wanted? The district court did comply with the remand order. It looked at his motion and it was sensitive to Mr Thiele's medical issues. But despite those medical issues, the court found that he was capable of complying with a simple instruction to amend. And the court noted that perhaps counsel could be appointed later in the litigation. But to move the case along, the court believed that he was capable of amending. And so it's a judgment call. The court seemed to indicate to me, it seemed to be indicating that if you filed the original complaint, you ought to be able to amend it. And that doesn't make a lot of sense to me. That means nobody ever gets counsel if they can, if they could file the original complaint, but keep in mind that the standard that we're applying here is abusive discretion review. And the court made a factual finding that Mr Thiele, despite his medical issues, was capable of complying with the order to amend. And he was capable of articulating his claims. He just needs to correct the pleading defects as identified by the district court in the order in screening order. That kind of finding, um, is that a factual finding? I believe so, correct. And so, and judges want to make these judgments. Did the court have a hearing? The court did not. And so how did the court know about the physical condition and assess it independently to make factual findings? The court wasn't saying that, you know, Mr. Thiele, you're not, the court wasn't really addressing whether his medical issues were real or not. It was just really focusing on the narrow issue of whether he was capable of amending, despite those medical issues. It gets back to Judge Schroeder's initial question. Assuming that the physical condition impaired his ability to comply with the order, did the district court take that into consideration? Well, the court did take that into consideration, but also look at the record. I mean, what, what, what's your indication in the record that the court did that? Well, the court noted that he was suffering from some medical issues, but the court did state that he was incapable of amending. Based on the fact that he had the volume of materials that he'd managed to file in the court so far during the litigation? That's correct. If Mr. Thiele was incapable of anything, he was incapable of taking no for an answer. The court just simply wanted him to amend, and he deliberately refused to comply. And that kind of... Let me ask you this with regard to the McInnes case. Let's say that we look at the case that was aired and screening it out, and the court said, well, now you've got to amend, and he tells the court, I cannot amend. Is that enough of an indication that I'm going to stand on the original complaint such that we can then reach past the Rule 41b dismissal to assess the merits of the original complaint? If he had said, I cannot amend because I don't know what else to allege, then that would ripen into a judgment which would bring everything up on appeal. But he didn't do that in this case. He gave the court no inkling, however unartfully, that he had trouble with the pleading standard. Well, why wasn't the motion for counsel enough to say, I'm having some difficulty and why I need counsel so I can amend? But the court rejected that in saying that you don't need counsel to amend. Well, I know that, but I'm just saying it's sort of a circular argument you're making here, I think, respectfully. I mean, it's... The problem here, I think, is one identified, is that once you get this Rule 41 dismissal, then it precludes, if the district court proceeds along those grounds under your theory, then it really prevents review of the merits of the initial dismissal of the complaint period, right? That's correct, under the Edwards decision. So if there's a sufficient indication on the record that really he wanted to amend and the district court deprived him of the opportunity to amend because it just said, I'm not going to appoint you counsel, it's a bit harsh to say, now you're precluded for us to look behind on the merits of the first dismissal, isn't it? I don't think that's a fair characterization to say that the court precluded him from amending because we do know that the court gave Mr. Tilley multiple opportunities. Well, let's assume hypothetically that we have a really good, valid complaint that's well articulated and the district court then says, this is hypothetically, says, well, this is inadequate. I'm going to dismiss this with leave to amend. He says, well, I'm not sure what more I can do. Please give me counsel. He says, well, you didn't amend, so it's a Rule 41 dismissal. You really have prevented the litigant from ever reaching, appealing the merits of the original dismissal, haven't you? I think, Your Honor, your statement about there's nothing more I can do about the complaint would be dispositive to say that, you know, especially under the rule of liberal construction, the court can't construe that kind of statement. Well, why can't we construe the motion for counsel the same way? But there's nothing in the multiple motions for counsel that he had any intent to amend. In fact, in the CDCR case, he even asked for two extensions to comply with the district court's screening order. And when the court granted him those extensions, instead of submitting an amended complaint, he just filed another motion for counsel. So it's clear that he never had any intent to amend. He just simply refused to, he halted the litigation, refused to move the case along unless the court gave in to his demands for counsel. And I don't think that kind of behavior should be, you know, encouraged here. We certainly want litigants, including pro se litigants, to comply with the district court's orders. And they shouldn't be surprised when, despite multiple warnings, that the case gets dismissed for failure to comply with orders. So he says, I'm almost always crippled and bedridden and completely unable to concentrate and cannot properly review research and prepare my own documents. Just because he said that doesn't mean that the district court has to accept that as true. And so here... So how did the district court make the determination that it was false? Well, the court didn't say that outright. But the court said, well, given that we're, given that the case is in its early procedural infancy, all I'm asking you to do is amend and you're capable of doing that. So please do that. That kind of finding on the front lines of litigation, this court should defer to. The fact that the court could have gone the other way, it was reviewing de novo, it's not the proper, it's not a proper basis to reverse. And so, so long as it's within the district court's discretionary power and it's not clear, this court would have to affirm under a deferential standard like abuse of discretion. Now, my opposing counsel states that, especially in the CDCR case, that the district court denied him counsel simply because, noting that his medical issues were irrelevant. I don't think that's a fair characterization of the order, because the district court, especially the order occurred post-judgment. And when you're challenging a post-judgment order denying reconsideration of a motion, you run into another standard of review, which is abuse of discretion, whether the court abuses discretion in denying reconsideration. So now you run into a double-deference standard, whether the court erred in denying reconsideration and whether the original order was an abuse of discretion. So I think counsel runs into two problems for that particular order. Now, the gist of, the theme throughout the district court's orders in the CDCR case is that we're at the pleading stage. The only defendant that you sued here so far is a State entity that's entitled to Eleventh Amendment immunity. So clearly, counsel must concede that that doesn't state a claim against the defendant. And the court rightfully ordered Mr. Tilley to amend. And so under, even under opposing counsel's theory, the fact that the district court properly dismissed the case for failure to state a claim doesn't bring up that order for review from a dismissal for failure to prosecute. There were two grounds. There was the Eleventh Amendment ground and the fact that there was a class action pending. And the second ground is dubious. The, we conceded error, Your Honor. In order to get to the injunctive relief aspect of a case, you have to state a claim against somebody in the first place. So you don't even need to address the injunctive relief if you don't even state a claim against any particular defendant. And that's why the district court ordered Mr. Tilley to amend. And that's why counsel rightfully conceded that the dismissal was proper. Unless the Court has further questions. Thank you for your argument. I just want to make one closing remark. Judge Nguyen, chúc mừng năm mới. Chúc mừng năm mới. To you, too. I'd like to make, try to make four arguments in my rebuttal. First, I'd like to, to discuss the issue of a factual finding of Mr. Tilley's ability to amend, which my opposing counsel stated that the district court made a factual finding. That's simply not true. And I believe that he was talking about the CDCR case. On ER page 2, the, the statement that plaintiff appears able to present his claims adequately preceded the Court's discussion or its brief mention of his medical issues. It simply wasn't a factual finding of his ability to amend in light of his factual issues. And even if, furthermore, the, the court in McGinnis acknowledged Mr. Tilley's medical issues, so there certainly wasn't a factual finding there. And I believe that even if the, even if the district court's order in the CDCR case is ambiguous, and I don't think that the Court should read an adverse factual finding from silence or, at best, ambiguity. Secondly, I'd like to address the issue of whether Mr. Tilley properly invoked his, his right to appeal and his request for a judgment. I don't believe that any magic word should be required to, to invoke the, the Edwards rule that, that my opponent suggests exists. If Rule 41B takes away an otherwise appealable order, it shouldn't be lightly imposed. And so requiring some type of formal incantation, particularly of a pro se plaintiff, is a, a really extraordinarily high bar. And, and it's also inconsistent with Federal Rule of Civil Procedure 46, which states that a formal exception to a ruling or an order is unnecessary. And I think that this ---- Breyer. How do you square that with WMX, though? Saharsky. I'm sorry? Breyer. How do you square that with WMX? Saharsky. Well, W, well, WMX actually ---- Breyer. WMX basically said, look, we can't leave these cases hanging out there. There's no final judgment. We need some affirmative indication of judgment entered so that we can get an appealable order or not, so we know what we're dealing with. Saharsky. Yes, Your Honor, and WMX actually supports Mr. Thiele's case in, in this instance because WMX didn't state that you have to say, I hereby stand by my complaint and I want an appeal. WMX stated that the district court needs to know when it can close the case. And so I do believe that an affirmative indication that, that a complaint will not be forthcoming is necessary, but I don't think any magic words should be required. Third, the, the only time that the district courts in, in either of these cases addressed ---- I see that I'm out of time. Can I finish this point? Go ahead and finish the sentence. Thank you, Your Honor. The only time that the district courts addressed Mr. Thiele's medical issues at all were in the final orders, and they did so incorrectly, with the district court in CDR stating that it wasn't a basis to appoint counsel, and the district court in McGinnis referring to as incarceration outside an institution. And I think that, that, that that's the only time when it discussed his issues at all and needs to be taken into account. Thank you, Your Honor. Thank you, counsel. Thank you both for your arguments this morning, very helpful. And the case just arguably submitted for decision.
judges: Schroeder, Thomas, Nguyen